This is the hearing in the case In Re. Cornell Eugene Kirby, 9th Circuit, docket number 17-80194. This is in the nature of an evidentiary hearing pursuant to the Federal Rules of Appellate Procedure Rule 46 and 9th Circuit Rule 46, in which Mr. Kirby has requested an opportunity to appear here today in response to an order to show cause issued concerning whether Mr. Kirby should be sanctioned, suspended, or disbarred for a number of charges that were set out in the order to show cause. We're beginning an hour late because of travel difficulties, so I'm hoping that we can move quickly and get everything done today. Mr. Kirby, would you mind approaching the lectern there? Although it's a relatively small courtroom, the acoustics are not great. A couple of preliminary matters. I wanted to let you know that this hearing is being recorded, so in the event that you would need any transcript, one could be, or a copy of the hearing can be made available. I also wanted to get an idea of how you wish to use the time today, how you propose to proceed in response to the order to show cause. Your Honor, since this is my first time ever appearing in a session like this or an informant like this, I'm not really sure exactly how to effectively use the Court's time. Well, I have, it's your hearing, you requested it, so if you have anything that you want to say in addition to what you've already submitted, this would be the time to do that. I may grant you leave to file subsequent filings, and I have some questions for you. So if you would prefer for me to start with my questions and then you can add whatever you wish at the end, I'm happy to proceed that way, but I don't want to prevent you from making whatever points you came here to make. Your Honor, we can proceed with the questions that you would like to ask, and I would like opportunity to speak at the end. All right. I would like to begin by having you placed under oath, because I want to make sure that the questions are under penalty of perjury. So I'm going to have the courtroom deputy administer the oath right now. Your Honor, will you affirm that the statements you are about to make in this case after this Court will be the truth of the law, as it was announced by the judge, and that you do not intend to attack me for perjury? Yes, I do. Please state your full name for the record. Ornell Kirby. All right. Well, let me start out by getting a little bit about your background. Why don't you start with when you graduated from college? Why don't we begin there? When did you graduate from college? I graduated from law school in 2003. And when did you graduate from college? Yes, I graduated from college in 1996. And where did you attend college? Metro State University in Denver, Colorado. And where did you attend law school? Thurgood Marshall School of Law on the campus of Texas Southern University. Texas Southern University? Yes. All right. And after you graduated from law school in 2003, did you take a bar exam? Yes, I took the Washington State bar exam in 2005. And what did you do between 2003 and 2005? Just prepare for the bar. Okay. Did it take you some attempts? I didn't take any preparation courses, so I just pretty much just studied. And so I could be successful in passing it. Were you employed during that two-year period? I was working as, I believe, a security officer at that time. I wasn't working in the law field at all. I see. All right. So in 2005, you passed the Washington State bar? That is correct. All right. And then what was your first legal job? As an immigration attorney. And where did you work? For myself, solo practitioner. Okay. So that was beginning in 2005? Yes, 2005. And did you have any other employment or positions between 2005 and now? No. Did you take over any practice from somebody else or get any kind of a mentoring? In the beginning, no. I started with one client and built my practice from there. Okay. But you didn't have any kind of affiliation, formal or informal, with any other lawyers? I knew lawyers in the practice, but I wouldn't say there was an affiliation with them. Okay. Now, what was your relationship with Rosario Rodriguez? Rosario Rodriguez was a classmate at Texas Southern University. And, again, she's from Washington State. And, again, like I said, she told me I should come up here and take the bar. I came in here and took the bar. She went to work for Rios Cantor, I believe. And, again, I went into solo practice. Does she work in immigration law, too? Yes. And how did you learn about immigration law? From law school. Okay. Do you know what happened to Rosario Rodriguez? She was disbarred, I want to say, in 2012. And at that time, because of her caseload, I did take over a lot of her cases. At the time, she was actually officially disbarred and not able to practice law anymore. All right. And do you have any staff to assist you? I have two staff, two full-time and one part-time staff member. And what do they do? The primary responsibility of the two full-time staff members is to prepare applications, take client phone calls, and, again, do any translation that I need for any Spanish-speaking clients. They don't do any legal work? No. And what about the part-time employee? He just primarily answers the phone. All right. So there were a number of issues that were raised in the order to show cause, well, four headings. And one of the headings was the court's articulated concern about the number of extensions of time that you had requested in all or nearly all of your cases, which led to a typical time of about a year or so between the filing of a petitioner review and the brief, if you got to that stage of filing a brief. And I didn't see that you had addressed that concern in your response. I believe in the pre-hearing statement I did address the issue regarding the point. Can you point my attention to that, where that is? Because I didn't see it. Maybe I missed it. All right. I believe I did cover that, but apparently I do not see it in the brief that I submitted for the pre-hearing statement. I didn't see it. So why don't you respond to that concern? How do you answer that charge that you have filed an extraordinary amount of extensions according to the order to show cause? You've never filed an opening brief without securing multiple extensions of time. And in the last three years, it has become your standard practice to ask for as many as five or six separate 60-day extensions before submitting an opening brief. This is leaving aside another concern mentioned about cases that are dismissed for failure to file an opening brief. So how do you respond to that? Your Honor, my response to that is that I, again, understand the Court's concern about the number of extensions I requested. I mean, I was, again, under the impression that this was a, I wouldn't say a common practice, but a practice that was okay to do, because I was, again, in the five years that I have been practicing before this Court, this is the first time that many of these issues have come to my attention regarding any filings that I have done. Again, if I knew there was an issue regarding the numerous or number of briefs that were filed by the Court, I definitely would address it as I've addressed it since this has been brought to my attention. And most of these were valid requests because of caseloads and because, again, I'm a solo practitioner and I do practice before the EOIR, as well as the CIS, as well as the BIA, and, of course, before the Ninth Circuit, too. So has your practice changed with respect to seeking extensions of time now that you've received this? Yes. If I need an extension request beyond the streamline process, I make sure that request is conducive with the requirements of the Court. Again, I've structured my calendar where, again, I will not be taking as many Ninth Circuit cases, so I will not necessarily have to do that. One of the things that our rules require is a statement of diligence and substantial need, and that the substantial need cannot be supported by the mere conclusory statement that I have oppressive business. I have a lot of other cases. What that rule means in practical terms is that if you have a busy caseload, you have to explain what that caseload is. You can't just say, I've got a lot of work to do and I can't do your work, because it doesn't allow the Court then to evaluate the validity of the request and whether counsel is prioritizing Ninth Circuit work appropriately or just sloughing it off as letting time go by. Do you understand that? I do, again, as I stated before. Once I was made aware that, again, this was an issue, I have made drastic steps to correct any future problem and any filings from when I was first notified regarding this, that it will show that, you know, any motion for extension of time beyond the streamlining, I have, in fact, again, like I said, complied with the requirements of the rules that, again, as you just stated, that you need to express due diligence in any case. Again, that's not a practice. The practice of asking for multiple extensions is no longer something I do anymore. All right. So the case that got us here that kind of was the straw that broke the camel's back, so to speak, was the Dominguez-Gonzalez case in which there was a dismissal for failure to file the opening brief. It was a period of time before there was a motion to reinstate. That motion to reinstate was denied, and then that panel that denied it referred the matter to me for the initiation of disciplinary proceedings. And your response to, or your explanation for why you took so long to get this case back on track, I'm not sure I can answer that. Was your assertion that you experienced problems with your computer system. You were not sure you received notifications that led you, that did not alert you to the need to take action in this case. Is that, am I accurately portraying what you said? That is accurate, but if I can offer some procedure history behind it. Well, I am not happy to hear about your procedural history of what happened, and I also want to hear what steps you have taken to address the problem. Your Honor, initially the case was dismissed because there was an issue where the court said the fee wasn't paid. Again, we did a motion to reinstate showing proof that the fee was paid. The motion was granted, and then for some reason I never got any other information from the court. Again, this has to do with the old computer IT person I was using, who was a long-time employee, as I stated in my statement, but he's no longer with me anymore because of the numerous problems I was having regarding the work he was doing and the way he had the computer system. So, again, I have addressed the issue, addressed the problem, and contracted with a whole new entire company that ensured me that, you know, these problems won't occur. Now, what problems occurred? Well, according to the assessment of the new company I'm with, they were saying that he was using my server on five different servers, so then the anti-spyware or whatever he was using wasn't functioning correctly. They were saying there was numerous problems regarding the way he was conducting my business. Because any time I addressed him with an issue, he would simply say, yeah, I'll take care of it, and that's the problem. Now, how did you verify that you didn't receive notification from the court on this Dominguez case? How do I verify I did not and see that's the problem? I cannot. Again, Your Honor, I cannot make an excuse because, of course, I should have, since I didn't hear anything from it, I should have followed up and seen whether any type of disposition or any information was sent on the case, and I did not do that. I mean, I take full responsibility for that. When we send out email notifications on all these matters, we typically get a note if there's some computer issue that it's not actually received. Our system is designed to give us a bounce-back notification, so we know that there may be a notice problem. I'm not aware of anything like that happening here. So we have to be able to rely on the fact that when we send things out to a registered user of our system, that it's received. We assume that. But, you know, there's another problem with this case, aside from the lack of notification, is my concern that if for whatever reason you don't get it or it gets misplaced, where's the backup, where's the tickler system, where's the safeguard against a case just falling through the cracks and subjecting your client to fairly drastic consequences, potentially? What kind of safeguard do you have in place to make sure that a case like this one just doesn't sit there without action being taken? Well, with the new IT company, we're attempting to develop a program where, again, we can keep track of these cases, but then put them on a calendar schedule where someone will always be reviewing the cases and make sure that, again, like I said, this situation has happened. This was a mistake. It was. I mean, it was a mistake on my part. Again, I should have followed through, followed up when I didn't receive anything from it. Again, like I said, this is an issue, a problem that will not happen again, because as you said, it does not only affect me, it affects the client, and like I said, in harsh and drastic matters. So I do take that very seriously, and it's something I definitely seriously have addressed. So what's the system that you now have in place? The system now is that we chart them all on a board and make sure, again, until we have confirmation on the movement in that case, that case is not taken up that board, so it is always visual. I walk into my office, I see the board. Is this a manual board that's sitting up on your case? Yes. So what about the computer? The cases are still logged on the computer, but it's easier to see that case every day. I walk in, I look at them, that's the first thing I walk in, I see the board, this case is here. This case is here, especially with the smaller number of cases for the ninth circuit I'm actually taking. So it won't be a case of 50 cases up there, it'll be a case of 10, which is easier to track, because then I'll see, her case is here, her case is here, her case is here. I haven't heard anything regarding this case, we need to find out and make contact if it's not tracked through the computer system, because, again, I've always been concerned about the possibility of computers and information being lost. To me, I'm a very visual person, and it's easy for me to track it that way and follow up through the staff and make sure they're doing their checks through the system located on the computers. Okay, but do you also have computer ticklers? Yes. Okay, that's good. Now, how do you get your cases, your ninth circuit cases? Are these cases that you've worked on below, or are these cases that other attorneys refer to you, or both? Actually, they're both. Primarily, most of the cases that I have in front of the ninth circuit today are cases that I've handled from the initial master's hearing. So what are you going to do about, how are you handling reducing your workload of ninth circuit cases? If I, once I, again, go through the individual case with the respondent, if the case is denied, if they decide they want to proceed with the BIA appeal, we do the BIA appeal, and at that time, I will do a full assessment of their case and let them know, this is the situation with your case. Now, this is the likelihood of you wanting your case. If I don't think it's a strong case to appeal, just to appeal, I will tell them they need to refer to someone else, because that's not an appeal I'm going to take on just to appeal your case. When you say appeal, you mean to the ninth circuit? Yes. Petition for review? Yes. So there was a section of the audit issue caused that discussed some of the problems that we, the court, has seen in your briefing. And I'm wondering if you wanted to react to any of those specific cases, or if you want me to ask you specific questions about those cases. Well, let me, let me go through one case with you, and maybe this will be helpful. I hope it will be helpful to both of us. I want to go through a case called Garcia-Garfias v. Sessions. Does that ring a bell? No. Okay. Well, do you have a copy of a brief that you can show them? It's not a USC. It's not a USC. Oh, I'm sorry. Actually, this is not a case. Wait a minute. Yes, it is. It's not discussed, but it's listed as one of the cases. Yeah. No, this is not one that we identified as having problems. But I want to go through the brief with you, and maybe just take a minute to see if this will come, refresh you a little bit. You don't have to read the whole thing. Just see if this is, you filed this brief in December of 2016, so a little more than a year ago, a year and two months ago or so. Does it look familiar to you? Yes. Okay, good. So I just wanted to make a few observations about this brief, and some of what I see in this brief is related to some of the problems we saw. But let me begin by having you look at page 10. And the last paragraph there, note that the brief says the board affirmed without opinion the decision below. Okay? So, and that is accurate. So then if you move two more pages to page 12. Okay, so first I want to draw your attention to the very first sentence on agency decisions. The first sentence says the IJ did not find that Mr. Garcia was a credible witness. That's not correct. The IJ found him to be credible, and so granted him voluntary departure. And you say that on page 17. If you look at the last sentence of the runover paragraph, Mr. Garcia was found credible by the immigration judge. Okay, so then going back to page 12, the board dismissed Mr. Garcia's appeal. Then you go on to say the board agreed with the IJ's determination that Mr. Garcia failed to establish they had suffered past persecution. But the board never issued an opinion in this case. So this is troubling because it seems like this is a canned brief, that no real thought went into this description. So I'm concerned about whether you're giving sufficient attention to preparing briefs that the Court expects of members of the bar. Now, in the course of discussing the problems of the briefing, I'm not sure that the order to show cause conveyed sufficiently the degree to which we found problems with your application of the law to the facts. And when we talk about canned or boilerplate, you have a lot of legal statements. The law is this, the law is this, the law is this, the law is this. Sometimes it's right on point in the case, sometimes it may be off point. There's nothing particularly alarming about that. But where we do find problems is then when you discuss this case and apply that legal analysis to the facts of the case. That's where you win or lose. And a lot of time, there's not really more than a conclusory statement of how you would apply the law to the facts of the case. And that's where you lose the analysis of a particular social group or a well-founded fear of persecution. What here, what facts here did that? And in the statement of the argument, in the argument, in that process, when you are going to say that the petitioner in this case had a well-founded fear of persecution based on this event or this evidence, you have to give a citation to the record in the argument section for that proposition. If you're saying that the petitioner credibly testified that he was fearful of retribution by the Cholos gang, you have to show where that is. You say here, not in the facts section, but in the argument section, on page 15, the last sentence of the first paragraph. I think this may be the first reference to the Cholos gang. You say, the Cholos gang has imputed onto Mr. Garfia's, and I'll leave aside the language issue there, onto Mr. Garfia an opinion that was expressed by his willingness to cooperate with the Mexican authorities in their efforts to prosecute the gang members for criminal activity. But there's no citation there for that proposition. It's not, nowhere in the IJ decision does the IJ talk about Cholos, Cholos gang. So there's no way for the court to get this without somebody having to go through and go through the record. And that's not what the court has time to do. You have to tell the court where to find these things, or else it's going to be a waste. The court's not going to do it. You're not serving your client, you're not serving the court. You're wasting your client's time and money, you're wasting the court's time. Now, the same thing, I mean, again, on the next page, it's about the same time, at the same place in the very last sentence, it is indisputable that the claim before this court has to do with Mr. Garfia's fear due to his disapproval of the Cholos gang activity. Furthermore, the fact that he has been the victim of threats and physical harm. No citation. We don't know what you're talking about. Where's the proof? Not in here, not in your statement of facts here, not in the IJ. The record and the next, moving on, the record compels a finding that when Mr. Garfia's made a report with the police that the Cholos would impute a political opinion as a person who was working against the organization and working directly with the government, who was trying to stop their, leaving aside the fact that the sentence is unreadable and imperfect. There's no citation. This is not something that was discussed in the IJ decision in these terms, and there's no citation to the record. So there's no real evaluation here in a form that the court can use that applies this law, the particular social group well-founded fear of persecution. So, and that's what happened in this case. What happened in this case is that the government filed a motion to, for summary disposition in this case. You did not file an opposition to the motion for summary disposition, and the court granted it. Here's what the government said. Garcia Garfias asserts on review that the three incidents of crime he experienced in Mexico reflect that he was persecuted on account of an imputed political opinion. He specifically claims that gang members sought to persecute him because they imputed to him a political opinion against the gang after he filed the police report. Their citing to your brief there. Petitioner identifies nothing in the record that compels the conclusion that his alleged persecutors would seek to harm him on account of a political opinion imputed to him. He offers no record citations. He does not point to direct or indirect evidence of his alleged persecutors' viewpoint, such as statements made by his assailants attributing political views to him, or relationships he has to anyone known to have a particular political opinion, to raise an inference that a political view may have been imputed to him. So against that motion that calls you on not supporting your brief, there's no answer by you to say, well, I may not have put in my brief, but if you look at the administrative record, here it is. Nothing, and the Court dismissed it. So there's other things I could say about this brief. But do you appreciate the concern that the Court has when we receive a document like this and how it puts the Court in a very difficult position of having something that we have no way of responding to? It's deficient. Do you get that? I do recognize the issue that the Court is having with not citing to the record, because I clearly understand, because as you explained it to me, which makes it very clear, that when statements like this are made and they're not cited to the record, it's a conclusionary statement, with no factual record to back it up. What needs to be done is that if statements like this are made, it needs to cite to the record. Correct. That's in the rules, on the briefing rules, any statement like that. Not just in the statement of facts, but particularly in the argument where you're trying to win your case, you're trying to show that there's merit here to this case and here's why. You have to say, here's the best facts I have, here's where you look, find it in the record. This is where you find the persecution, this is where you find the fear. This is where you find the statement, this was held credible. Put this together, that's my case. At least you've presented the Court with a basis for making a decision. Here, there's no basis for the Court to reach the decision, and so the Court doesn't say in this case we have reviewed the factual assertions and we conclude that they're not sufficient to satisfy your burden. What they say is you haven't raised anything because you haven't cited anything and you haven't attacked things. So that's one problem in the way this case is raised. There was another very disturbing instance that I wanted also to mention to you that is specifically identified in the order to show cause, and that's, let's see, I made a note of this case because I want you to... This is a case called Gamis-Sosa v. Lynch, and just to really sort of simplify things, the immigration judge found the petitioner ineligible for relief based upon a firearms conviction and a third-degree rape conviction. There were other things in this case, but that was basically what happened. This is 13-73061. Now, on appeal to the BIA, the BIA said, well, we conclude that relief should be denied based on the firearms conviction, so we don't need to reach the third-degree rape. Your brief to the Court here discussed only the rape conviction, and didn't even mention the firearm conviction. So you raised an issue that was not relevant because the BIA didn't rely on it, and you waived the issue as to the firearms by not attacking it, so the Court said, well, you haven't addressed the issue before us. That was in the order to show cause. Did you review that case? Do you have any response to that, any explanation? Yes, Your Honor. Regarding that case, again, if I remember that case, I believe that is what I responded to in the pre-hearing statement. I think you did say something, but I'm not sure that what you said really answers the concern that was raised by, you know, what I just said. The issue in that case was regarding the, again, I was attempting to argue issues that were readily available to the respondent. Do you see, because of the posture of the case, that arguing anything about third-degree rape in that context was, like, irrelevant? Because the issues that were addressed at the BIA, I mean, it was out... Our Court reviews the BIA, right? Your petition for review here is from an order of the Board of Immigration Appeals, not the immigration judge, except in some rare instances. But basically, we're reviewing, on a petition for review, the petition for review is what the BIA does. Here, the BIA said, firearms adequate for denial of relief. Don't have to touch the whole question of third-degree rape. The immigration judge might have held, but we don't need to. So here, we're reviewing what the BIA did. You have to somehow, if you want to have a credible brief, you have to somehow address that firearms holding. You can't just ignore it. It doesn't do you any good, it doesn't do your client any good to file a petition for review that ignores an issue like that. And I'll canter, Your Honor, this is probably a situation where I should advise the client that after the conversation regarding the possibilities of him being, you know, successful in his petition on it, that maybe that's something he really should have pursued at that point. And if he decided that's what he wanted to do, to refer him to someone else. Well, that's, yeah, I think that's correct. I'm just trying to figure out what was in your mind when you were doing this brief. I was attempting to argue whatever I could to file a brief for the respondent. Again, like I said, and then in hindsight, again, these are those type of cases when they come up from the BIA, when I come up from the individual hearings, I sit down with the client and say. So when you sit down with a client and say that, I know that one of the issues that you talk about is the likelihood of success on the merits. But in immigration cases, there's also this notion of these folks are here, and if they prosecute a petition for review, there's a chance they might get a stay. But even if they don't get a stay, there's some likelihood that the government is not going to act on removing them until after the completion of Ninth Circuit proceeding. So is this something that you, is one of the elements that you discuss in terms of going ahead or not going ahead? I do not discuss with the clients in that context, but again, this is something the clients are made aware of. So I don't, I wouldn't necessarily say I would solely file an appeal for a client just because of the fact of the things that you just stated regarding the stay and the possibility that their removal order won't be executed until this decision is made on the appeal. But again, like I said, that is common knowledge. So here's another problem, and this is the whole particular social group issue. It's important that any issue that is raised here be exhausted, right? You get that notion? You can't raise issues that aren't in the record below that you didn't raise before the immigration judge and the BIA. So one approach that is evident in some of your briefs with respect to particular social groups is to raise or identify a particular social group here that was not articulated in the same manner to the board or the immigration judge. I think in one, I think I've seen you say, well, I didn't raise it, but it was implicit. But I don't think that's good enough. I think our exhaustion requirement requires giving the board, the immigration judge and the board, a fair opportunity to understand exactly what you're saying and not to, for them to have to read between the lines and somehow sense a particular social group, other than the one that you clearly identify. The law on this is pretty well refined and developed now, and the criteria are pretty well defined, although they keep continuing to get defined and redefined and particularized with respect to a number of new particular social group theories. But it's kind of like this same issue that I just talked about with respect to the firearms issue and the rape issue. If the BIA is identifying or you've identified and the BIA is addressing one particular social group, you can't come into our court and say, well, here's the real particular social group that was somehow implicit in what I raised before. I don't think this court would, it rarely would entertain that kind of approach. Are you following me here? Yes, yes, Your Honor, I am. Any comment about that? The only comment I would make is that the particular social groups are developed at the individual court level, through the respondent's testimony and any documents that the respondent submits in support of that testimony. In many cases, respondents are not effectively enough just saying I am a member of this particular social group. Through their documentation, which is part of the record, and through any statements they made, which is part of the record, those particular social groups are developed. Now I can understand the court is saying that those need to be exhausted at the BIA level, even though the judge may not address them because they didn't find that it was a particular social group. I always believe that's why I use the word implicit, because even though she didn't say I am a, or he didn't say I am a member of this particular social group because of this reason, but the language was there. It's your job as the lawyer. That's a legal analysis. I mean, the facts are the facts. It's your job as a lawyer to evaluate and analyze those facts and say, well, before you get to the eutroposy, you should already have a sense from your interview with your client about what it is that the client has to say that might qualify the client as a member of a particular social group. What's the evidence that's going to come out at the trial? Then it's your job to define what the particular social group is, supported by the evidence from your client. And, you know, I agree with the statement that you're making, but, again, the issue regarding testimony at the individual court level, in many instances, unless, again, the respondent is saying I am a member of this clearly defined particular social group, judges are not going to infer from your language or any documentation that you are possibly a member of some particular social group. But isn't that your job? Don't you have to apply for relief? If you're applying for asylum relief, don't you have to specify what the particular social group is that you are claiming you are a member of in order to get that relief? Not until the recent BIA decision. It wasn't required for you to specifically state. Some judges ask you, but it wasn't specifically stated that when you come into court, you need to have a particular social group clearly defined. And I believe because of the BIA's current decision, that will make it easier. Because the problem is that, again, I cannot testify for the client. I cannot ask the client, are you a Concord Ball indigenous woman, because I am testifying for the client. So the client has to say I am a Concord Ball speaking indigenous woman. And once she had established that, I could then further build on that to demonstrate the particular social group on account of and the persecution. But if she does not say that, there's no particular social group established. Let's move it up to the BIA level, though. Now you've got all the testimony in there. Don't you have to identify to the BIA what particular social group is at issue here? Again, unless it's clearly defined in the testimony or in the record that she is a member of this particular social group, she's going to say the same thing the judge says, that it was never clearly defined. But again, like I said, that's why the decision of the BIA came out saying you need to go in and state on the record this is a particular social group, which makes it much easier to move into the on account of and persecution. But the fact is in these cases you have identified a particular social group in the BIA. And then the particular social group that's discussed in the court of appeals is a different one. It was, again, I was working, I attempt when I write all my briefs to solely rely on the administrative record. I do not stray off any, I understand that it's difficult to see that because I wasn't referring to the administrative record when I was making these conclusion statements, which is clear, I understand that now. I can understand where that weakness in my briefs came in. Again, the information from the, especially from the documentation matched up with the testimony from the respondent at the individual hearing because it's all I really have to go on is what they said and the documentation to support that to try to establish the particular social group based on, again, the implicit factors. And that's how we will proceed. Okay. I don't want to belabor this point. I'm just... Okay. One other thing that's mentioned in the order to show cause is that you almost never respond to a government motion to dismiss or a motion for summary disposition. And I wonder why you haven't, like in this case, why you haven't engaged the government when they want to get rid of the case on a motion. Again, I've never really been clear about the motion to dismiss. I mean, because the language in the case, the case that they're supporting, the language in the motion to dismiss almost requires to write an opening brief. Because, I mean, because that's what's really requiring you. The government is saying this almost like that's their response brief before the opening brief is filed. So I was never really clear on that. I mean, you weren't clear that you could file an opposition? Well, the opposition will require you to, in essence, to write a full brief. So? Again, I was under the impression that the opening brief would serve that same factor. But if they file a motion for summary disposition, you don't get a chance to file the opening brief. Exactly. So why don't you file? So you have to file. You see that your cases are getting dismissed without an opening brief, right? So you're sort of waiving the opportunity to be heard if you don't file an opposition to a motion for summary disposition. And in many of the cases, again, once the government's brief is read, again, like I said, they come with pretty strong factors in their case and the determination has been made that . . . But your responsibility at that stage is then to take that brief and explain to your client why you're not going to oppose. And file a . . . Again, like I said, this was brought to my attention. Although the factors, again, like I said . . . Well, I don't think you're obligated to file an opposition. But if you don't file an opposition, that's almost a lie. You don't have anything to say. And that may or may not be the case, but the fact is that it seems like if you're filing a petition for review in these cases, you might have something to say in some of these. But we don't see hardly any cases where you respond. The government's . . . You know, they're not infallible in this Court. But they . . . Petitioners win from time to time. So do you ever recall ever filing a response to a motion to dismiss by the government? I have filed them. I wouldn't say I've filed them every time I was served with one, but I have filed them in the past. I just did recently file one. Again, like I said, I'm making attempts to rectify any concerns the Court has with the way procedurally or technically I've been filing my cases. I can't say that all the motions to dismiss that the Court has filed since the initial proceedings I have, but I have filed at least one. Okay. I wanted to show cause, going back for a moment to this question of extensions of time that you now have asserted that you would change your practice, assuming you were able to practice in the Court. There was a routine use of an explanation for extension of time, the planned family vacation. And so that was one of the reasons why it appeared that you were using sort of a boilerplate or canned motion for an extension of time, because it seems unlikely that someone would take as many planned family vacations as the number cited in your motions for extension of time. Do you have any comment on that? Again, every time I requested for family time, that was what it was for. I mean, I wouldn't cite it if that's what it was for. Was there ever a time that you filed a motion for extension of time not citing planned family vacation? I can't think of every one, but I'm pretty sure that was the common term used. So, yes. Okay. So the common term used, but you have, as pointed out in the original question, you can take a 60-day, then another 60-day, then another 60-day, and another 60-day. So 60 days, I have a planned family vacation. 60 days later, another planned family vacation. 60 days later, another planned family vacation. That's a nice life if you have that many planned family vacations. Well, I mean, again, a family vacation doesn't denote that I'm going to be gone for two or three weeks. It's just that there's something planned with the family at that time that prevents me from filing the motion on time. Again, Your Honor, I understand the concerns of the Court regarding that issue, and as I stated before, that any motions to current date, once this was brought to my attention, that this was an issue. Again, I have, besides the line behind this streamline, like I said, that's no longer a term that I use. Again, the motions are total in compliance with the rules regarding filing of motions through diligence. So, okay. So I don't have any other, I mean, it's not necessary for me to ask any questions. I think I've alerted you to the primary concerns that led to the filing of this order to show cause. I do want to give you an opportunity to make whatever statement that you came here to make. And then if I have other questions after that, I'll fire away. Go ahead. First of all, I'd like to say, Your Honor, I do not in no way take these issues that the Court is filing, with the filings of my practice before the Ninth Court, lightly. Again, I have made steps forward to correct any and all issues regarding this matter. Again, the Court has made it perfectly clear that this is not a way that I could continue to practice before this Court, if I'm allowed to practice before this Court. And like I said, all my filings have changed. Again, I've hired a new IT guy. Again, even the briefs I've written since initiating these proceedings, again, addressing the issues regarding not citing to the record in the body of the work, again, that has changed as well, because, again, I'm taking this very seriously. I mean, I want to be able to be an effective practitioner in front of the Ninth Circuit. I mean, again, I work very hard for my bar card, and I join practice in front of the Ninth Circuit. And I would like to continue to practice in front of the Ninth Circuit. And again, like I said, all of these things were just brought to my attention, and since they've been brought to my attention, I have worked effectively to try to change things. I mean, I've only been practicing in front of this Court for five years, which, again, I understand is no excuse, but it's still under process for me. And again, the Court has made it clear that I cannot continue to practice the way I practiced in the past, and I have made and will continue to make effective steps where, again, like I said, I can be a good member in standing in front of this Court. So I want you to maybe explain in a little more detail what changes you've made in the way you're practicing in the Ninth Circuit. Well, addressing the issue, again, as we stated before. Let's start with the petitions for review and the motions for stay. Tell me in what way your practice has changed with those, and then tell me what way your practice has changed with the briefs. Well, regarding the motions to stay, I no longer use, again, the form that I was using before. Again, I'm following the rules as they're laid out and how stays are supposed to be prepared. You're not citing DESTA anymore? I'm sorry? Are you still citing DESTA? DESTA. Yeah, or you call it DEST, I guess. In the, where is that? It's so boilerplate that you don't even know what's in the brief. Where is that? You spell it DEST, D-E-S-T, but the case is DESTA, which now I think has been kind of superseded. No, Your Honor, again, my briefs are citing current law regarding, you know, the motions to stay. What about the petitions for review? The petitions for review, Your Honor, again, I can say when the Court considered, I mean, drew issues regarding the rules of law, the arguments, and especially citing to the record, as the Court made clear today, that that's a big issue today. You will find that my briefs that I have filed since the disciplinary action began, again, I have addressed those issues. Anything else you want to say? Regarding the way you're approaching briefs. Let's talk about that for a moment. The way I'm approaching briefs? Yeah. You say now you're going to put more record cites in? Well, again, the issue, my understanding, as it was in the order to show cause, as you stated today, is that am I citing to the administrative record in the body of the work? Again, I understand how, again, without citing to the record, those closing statements are unable for the Court to make a determination on it, and since then, I have been citing to the record. And the nexus, and applying an analysis, applying the law to the facts of the case, especially in a causation context where you have to show a nexus between the legal theory and the facts. You have to show that this is the causation. It's because of this that there is the well-founded fear. There's a nexus between the fear and the political group. It's because you're a member of the political group that you have this fear. In cases, well, I haven't filed many briefs since I initiated this, but the reason why in the past, the nexus wasn't shown, because there was no nexus there. And you lose, right? This is the situation where that case should have been evaluated with the client and said, this is the situation with your case. Again, this is the biggest change that I made in the practice, is when, again, I take cases from the individual to the BIA, and it comes to the Ninth Circuit, and again, I bring the client in and say, this is what your case is. This is the strong points of the case. You cannot show it on account of, you cannot show no nexus, you can't even show a particular social group. Now, the odds on you being successful in your case, in my legal opinion, are this. Now, they'll ask me, because that's no longer a brief that I will file. Their brief will, either the responder will do a pro se, or they'll go to another attorney. That's the biggest thing I've changed in that. I'm not taking, I'm not filing briefs just to file briefs. That's, I mean, because that's the, probably the root of it all, was filing briefs just to file briefs. Some are because, if you review some of my cases, not all my cases are just this way. Some of them are, have been remanded, some are whatever, I mean, for different reasons. But those cases where the problems pop up, are those cases, I'll be honest with the court, it's filing briefs just to file briefs. And you argue the best way you can for the case. Those cases come in now, not me. All right. Let me just see if I've covered everything. I guess one, just one question, curiosity. In this case that got us here, this Dominguez case, Dominguez, Domingo Gonzalez, do you know what happened to the petitioner in that case? Do you think there was any non-frivolous claim that she had? She was one of those file a brief to file a brief. Because she couldn't meet the particular social group or their own account. Okay, so filing a brief to file a brief gains the benefit of the stay, if a stay is granted, or at least some additional time in the country. Is that what was going on in those cases? Yes. Okay, I appreciate your candor. All right. So I'm going to prepare a report and recommendation about what to do with you. And whether to recommend sanctions, suspension, disbarment, probation, admonition, whatever. That report and recommendation will be submitted to you. You'll have some time to review it. And you can file objections or comments, if you so choose. After we receive your comments or after the time expires, that report and recommendation will be ruled on by a three-judge panel of the court. And they will decide whether to accept my recommendation or do something else or have further proceedings. Any questions? No. All right. Well, thank you for coming. I'm sorry that you had a difficult time getting here. But I think we did cover everything we needed to cover in good time. So good luck to you, Mr. Kirby, and thank you for appearing today.
judges: Appellate Commissioner Shaw